STATE OF NORTH CAROLINA v. CURTIS HAIRE

No. COA10-37

(Filed 20 July 2010)

**1. Criminal Law— instructions—self-defense—plain error analysis**

The trial court did not commit plain error, or error, in an assault with a deadly weapon inflicting serious injury case by its instruction on self-defense. The instruction, considered in context, revealed that the burden was upon the State to satisfy the jury beyond a reasonable doubt that defendant did not act in self-defense and the circumstances under which the jury could return a verdict of not guilty by reason of self-defense.

**2. Jury— request for production of written copy of instructions—trial court discretion to deny request**

The trial court properly exercised its discretion in declining to produce a written copy of the jury instructions when requested by the jury. Further, no party requested the instructions be provided.

STATE v. HAIRE

[205 N.C. App. 436 (2010)]

Appeal by defendant from judgment entered 14 August 2009 by Judge Tanya Wallace in Richmond County Superior Court. Heard in the Court of Appeals 9 June 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Allison A. Angell, for plaintiff appellee.*

*Leslie C. Rawls for defendant appellant.*

HUNTER, JR., Robert N., Judge.

Curtis Haire ("defendant") appeals his conviction of assault with a deadly weapon inflicting serious injury. On appeal, defendant asserts that the trial court (1) committed plain error by giving the jury an erroneous self-defense instruction and (2) abused its discretion by declining to tender a written copy of the jury instructions to jurors when asked by the jury to do so. After review, we affirm the judgment of the trial court and conclude that the court did not commit plain error or abuse its discretion.

## I. Factual Background

On 9 March 2008, defendant was involved in a physical altercation with Vinh Michael Gazoo ("Gazoo"). During the altercation, Gazoo was stabbed numerous times, causing significant bodily injury.

On 21 April 2008, defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury. Defendant entered a plea of not guilty and was tried before a jury on 14 August 2009.

At trial, the State's evidence tended to show the following: Gazoo testified that he was spending the night at the residence of Shannon Lentz ("Lentz") located on Loch Haven Road, Rockingham, North Carolina. Lentz is defendant's former girlfriend.

On the morning of 9 March 2008, Gazoo, Lentz, and her children were playing softball in the front yard at Lentz's home. Gazoo was hitting softballs to the children and had a bat in his hand. As they were playing, defendant drove up to the house. Gazoo heard tires squeal and saw doughnut configurations in the road. Gazoo told Lentz to take the children into the house in case a problem arose.

As defendant got out of the car, Gazoo walked toward defendant and tossed the bat about twenty-five feet to his left across the driveway. At this time, Gazoo noticed that defendant was holding a knife

with a black blade. The two men exchanged words and Gazoo told defendant that Lentz did not want him at her house, and if defendant had a problem, he could come see Gazoo at his house. Gazoo also told defendant to leave the car he had driven to the scene because it belonged to Lentz. Defendant responded by saying he would not leave the car, but instead would contact the Sheriff's Department to help him recover his belongings which were still at Lentz's house. Defendant then muttered something that was inaudible to Gazoo and started walking back towards the vehicle. Then defendant said, "I'll be seeing you." At this point, Gazoo grabbed the bat from the yard and walked toward defendant. Gazoo then heard the sound of defendant's car door and turned his back to defendant. Gazoo took several steps towards the house. An altercation ensued and lasted several seconds.

Lentz testified that Gazoo grabbed the bat from the yard and approached defendant. Lentz testified further that as the men were fighting, Gazoo swung and hit defendant with the bat in his head and left arm and that the bat bounced off defendant's head and flew away.

Gazoo refutes this contention and said that he felt "three punches" to his left shoulder. Gazoo stumbled and leaned forward where he felt another large blow to the middle of his back. This blow dislodged the bat from Gazoo's hand, whereupon Gazoo swung his fist at defendant. Gazoo then saw defendant pull the knife from Gazoo's rib cage. Gazoo grabbed defendant and pulled him to the ground where they wrestled for control of the knife. This struggle caused two additional cuts to Gazoo's ear that nearly severed the ear. At this time, Gazoo wrapped his legs around defendant's arm, rolled his body around, and kicked defendant to free himself. Defendant returned to the vehicle and left the scene. Gazoo stood up and saw that blood was spraying from his body. Lentz's neighbor ran over and told Gazoo to lie down beside the road.

EMS arrived and paramedic Michael Sharpe ("Sharpe") observed Gazoo lying face down on the ground with several stab wounds to his back and left side. Gazoo told Sharpe he had been stabbed from behind. Gazoo was transported to the emergency room at Richmond Memorial Hospital. At the hospital, Gazoo was alert and conscious as x-rays and a CAT scan were performed. Gazoo was then airlifted to Charlotte to receive treatment at Carolinas Medical Center where he was admitted for four days. There, Gazoo told a nurse, Joy Austin, that he had been stabbed from behind. Gazoo's injuries included two

punctured lungs, a spleen that was cut in half, as well as a punctured trachea. Gazoo also suffered nerve damage throughout his body that causes him to tremble. While at the hospital, Gazoo was also diagnosed with post traumatic stress disorder, paranoid schizophrenia, and bipolar disorder. In addition, his thyroid is not functioning properly and he requires daily medication to manage his injuries.

After leaving the scene, defendant surrendered himself to the Sheriff's office. Defendant was interviewed by Detective Jay Childers ("Childers") and was advised of his *Miranda* rights. Defendant signed a waiver and gave a written statement to Childers detailing his recollection of the fight. Defendant subsequently provided consent for a search of his vehicle. The knife was recovered from defendant.

At trial, defendant took the stand and asserted that he acted in self-defense. Defendant testified that the physical altercation started when Gazoo came at him with the bat. Furthermore, defendant testified that he put his hands up and told Gazoo he did not want to fight.

At the conclusion of trial, the judge instructed the jury on all of the substantive elements of the case and thoroughly explained the law. The judge also gave the pattern jury instruction on self-defense pursuant to N.C.P.I., Crim. 308.45 (2008). The judge instructed the jury as follows:

> If you find from the evidence beyond a reasonable doubt that the defendant assaulted the victim, but not with a deadly weapon or other deadly force, and the circumstances would create a reasonable belief in the mind of ordinary firmness that the action was necessary or appeared to be necessary to protect that person from bodily injury or offensive physical contact, and the circumstances did create such a belief in the defendant's mind at the time the defendant acted, the assault would be justified by self defense even though the defendant was not thereby put in actual danger of death or great bodily harm.

After being instructed by the judge, the jury found defendant guilty of the lesser included charge of assault with a deadly weapon inflicting serious injury, and the judge sentenced defendant to 20-33 months' imprisonment. Defendant gave oral notice of appeal in open court.

Defendant asserts the following assignments of error on appeal: First, he argues that the trial court committed plain error in its jury instructions regarding self-defense. With regard to his first assign-

ment of error, defendant specifically contends that the trial court's jury instructions erroneously suggested that defendant must prove self-defense beyond a reasonable doubt, and that the jury could only find that defendant acted in perfect self-defense if he did not use a deadly weapon. Second, defendant argues that the trial court abused its discretion when it declined the jury's request for a written copy of the jury instructions.

## II. Jury Instructions Regarding Self-Defense

[1] Defendant contends that the jury instructions given by the trial court were misleading and suggested that defendant had to prove self-defense beyond a reasonable doubt. After reviewing the evidence and the specific jury instruction, we conclude that there was no plain error that would warrant a new trial.

In the case at the bar, defense counsel failed to request a modified jury instruction at trial and lodged no objection to the pattern instruction. Therefore, as requested by defendant on appeal, this Court must review the issue for plain error. *See State v. Goforth*, 170 N.C. App. 584, 587, 614 S.E.2d 313, 315 (2005). Under the plain error standard, defendant must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict. N.C. Gen. Stat. § 15A-1443(a) (2009); *State v. Lucas*, 353 N.C. 568, 584, 548 S.E.2d 712, 723 (2001). The error in the instructions must be " 'so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him.' " *Id.* (quoting *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993)). " '[I]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378 (1983) (citation omitted). In deciding whether a defect in the jury instruction constitutes "plain error," the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt. *Id.*

In this case, defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury. The jury was instructed on this charge and its lesser included offense, assault with a deadly weapon inflicting serious injury. In addition, during the charge conference, the trial court reviewed the instruction on self-defense with both attorneys and instructed the jury accordingly. The court used the pattern jury instructions for self-defense that accompany an

assault using deadly force. N.C.P.I., Crim. 308.45. Based on the court's instructions, defendant was convicted of assault with a deadly weapon inflicting serious injury.

Defendant asserts that the pattern jury instructions should have been modified to accommodate the specific facts of his case. Defendant further contends that absent that specific modification, the pattern instructions misled the jury. After review, we hold that defendant's contention is not supported by the evidence in the record.

The court instructed the jury as follows:

> If you find from the evidence beyond a reasonable doubt that the defendant assaulted the victim, but not with a deadly weapon or other deadly force, and the circumstances would create a reasonable belief in the mind of ordinary firmness that the action was necessary or appeared to be necessary to protect that person from bodily injury or offensive physical contact, and the circumstances did create such a belief in the defendant's mind at the time the defendant acted, the assault would be justified by self defense even though the defendant was not thereby put in actual danger of death or great bodily harm.

Defendant admits that the specific language in the pattern instruction was given pursuant to N.C.P.I., Crim. 308.45. (2003). It is also important to note that a trial court's use of pattern jury instructions is encouraged, but not required. *State v. Morgan*, 359 N.C. 131, 169, 604 S.E.2d 886, 909 (2004).

The trial judge has wide discretion in the manner of which issues are presented to the jury. *State v. Harris*, 306 N.C. 724, 728, 295 S.E.2d 391, 393 (1982). If clarification of the instructions was an issue, defendant could have submitted a request that the trial court give the jury a special instruction pursuant to N.C. Gen. Stat. § 15A-1231(a) (2009). The record clearly shows that defendant did not submit special jury instructions on self-defense nor did defendant object and request any changes to the charge after the court instructed the jury.

Defendant also argues that the self-defense instructions given by the trial court were misleading. Long-standing precedent in this Court explains that the charge to the jury will be construed contextually, and segregated portions will not be viewed as error when the charge as a whole is free from objection. *State v. Reese*, 31 N.C. App. 575, 230 S.E.2d 213 (1976). In the present case, the trial judge fully instructed

the jury first on the issue of self-defense and then on all of the elements of the crime and its lesser included offenses.

After the elements of each count were described by the judge an admonition regarding self-defense properly allocating the burden of proof was given to the jury. For example, the judge instructed the jury on the following issues:

> Again, if you are satisfied beyond a reasonable doubt that the defendant committed an assault with a deadly weapon inflicting serious injury, you may return a verdict of guilty only if the State has satisfied you beyond a reasonable doubt that the defendant did not reasonably believe that the assault was necessary, or appeared to be necessary to protect the defendant from bodily injury or offensive contact; or that the defendant used excessive force or was the aggressor.

Defendant contends that the following portion of the jury charge given by the judge contained in the final section of the charge taken from the pattern jury instructions would have been misleading to the jury.

> If you find from the evidence beyond a reasonable doubt that the defendant assaulted the victim, but not with a deadly weapon or other deadly force, and the circumstances would create a reasonable belief in the mind of ordinary firmness that the action was necessary or appeared to be necessary to protect that person from bodily injury or offensive physical contact, and the circumstances did create such a belief in the defendant's mind at the time the defendant acted, the assault would be justified by self defense even though the defendant was not thereby put in actual danger of death or great bodily harm.

Defendant relies upon *State v. McArthur*, 186 N.C. App. 373, 651 S.E.2d 256 (2007), for the proposition that the above-quoted language literally read incorrectly shifts the burden of proving self-defense to defendant. *McArthur* does caution judges as follows: "We urge trial judges to take care in using the pattern self-defense instruction and edit it in order to ensure that the burden of proof is correctly placed on the State throughout the instructions" *Id.* at 381, 651 S.E.2d at 261.

While we agree with this *dicta* in *McArthur* that the wording of this instruction is confusing, the trial court properly edited the pattern instructions by repeatedly expressing to the jury, that the State had the burden of proving beyond a reasonable doubt that defend-

ant's actions were not in self-defense. When the trial court's instructions to the jury are considered in context as a whole, "we think the jury clearly understood that the burden was upon the State to satisfy it beyond a reasonable doubt that defendant did not act in self-defense and clearly understood the circumstances under which it should return a verdict of not guilty by reason of self-defense." *State v. Gaines*, 283 N.C. 33, 43, 194 S.E.2d 839, 846 (1973). Consequently, we conclude that the trial court committed no error, much less no plain error, in its jury instructions on self-defense.

### III. Jurors' Request to Review Jury Instructions

[2] Defendant also contends that the trial court abused its discretion when it declined to tender a written copy of the jury instructions after being asked by the jury to do so. We disagree.

This issue is subject to the abuse of discretion standard of review. In order to show that the trial court abused its discretion, defendant must demonstrate that the court's finding could not have been the result of a reasoned decision. *See, e.g., State v. Johnson*, 346 N.C. 119, 484 S.E.2d 372 (1997); *State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985).

Here, there is no evidence in the record that specifically demonstrates that the court did not come to this decision after reasoned thought and careful consideration. During its deliberations, the jury verbally requested a copy of the jury instructions. Regarding this request, the trial judge informed both attorneys outside the presence of the jury: "I do not have a copy of the instructions and I don't know if that's really a good idea." In response, both attorneys stated that they believed the court was not authorized to give a copy of instructions to the jury.

Moreover, as a precaution, the trial judge requested that the jury put their requests and questions in writing, at which point the jury sent the trial judge a note asking for the written instructions. The trial court then informed the attorneys outside the presence of the jury that "[t]he Court does not have a copy [of the jury instructions], and will be unable to deliver a copy of the instructions." When the jury returned to the courtroom, the trial judge stated, "[i]n my discretion, I am not supplying a copy of the instructions."

A trial court has inherent authority, *in its discretion* to submit its instructions on the law to the jury in writing. *State v. Hester*, 111 N.C. App. 110, 432 S.E.2d 171 (1993). Because no party requested the

instructions be provided, we conclude that the trial court properly exercised its inherent authority and did not abuse its discretion.

## IV. Conclusion

For the reasons stated herein, we hold that the trial court did not err in its jury instructions regarding self-defense. Moreover, the trial court properly exercised its discretion in declining to produce a copy of the jury instructions when requested by the jury. For the reasons stated herein, we conclude that defendant received a fair trial free of error.

No error.

Judges STEELMAN and STEPHENS concur.